Abbe BERSHATSKY, Plaintiff,

v.

Wilbur A. LEVIN, Commissioner of Jurors, Kings County, New York, Defendant.

No. CV–95–4121.

United States District Court, E.D. New York.

Jan. 30, 1996.

Donald Marcus, Brooklyn, NY, for Plaintiff.

Richard J. Cardinale, Assistant Attorney General, New York State Department of Law, New York City, for Defendant.

*MEMORANDUM AND ORDER*

TRAGER, District Judge:

This is an action brought by plaintiff, Abbe Bershatsky, for injunctive relief and a declaratory judgment that defendant, Wilbur A. Levin, Commissioner of Jurors, cannot use voter registration lists as a method for selecting jurors because it infringes upon her right to vote. Before the court is plaintiff's motion for a preliminary injunction and defendant's cross-motion to dismiss.

### Background

Bershatsky, a citizen of the United States and the State of New York, is registered to vote in Kings County. Affidavit of Abbe Bershatsky, Ex. A of Compl. at ¶ a. She explains that she received a juror questionnaire which stated that her name had been randomly selected from one of three lists, one of which is the Board of Elections Voter Registration List. The others are a list of filers of state income tax returns as well as a list of licensed drivers. *Id.* at ¶ b. She further states that she returned the questionnaire, *Id.*, and was called for jury duty on October 16, 1995. *Id.* at ¶ h. She also notes that she has a paying day job which is closer to her home than the court and that she has an elderly father at home with her. *Id.* at ¶ e. Finally, she states that "I wish to vote at the next general election without the knowledge that that could cause me to be selected for jury duty." *Id.* at ¶ d.

In plaintiff's complaint, she alleges that several lists are used in order to select the jury pool and that there is no attempt to eliminate duplications from the several lists. Compl. at ¶¶ 5–6. However, she refuses to establish that she has been called for jury duty on more than one occasion. According to plaintiff: "People are intimidated or coerced from voting or from registering to vote by the practice of selecting people for jury duty from voter registration rolls." Aff. of Abbe Bershatsky at ¶ 2. Furthermore, she alleges that "[s]erving jury duty is economically disadvantageous to people." *Id.* at ¶ 12. And, "[p]eople who register to vote in a federal election believe they increase the probability of being called for jury duty." *Id.* at ¶ 13.

Consequently, she maintains that it is "illegal and unconstitutional for defendants to select people for jury duty from voter registration rolls." Compl. at Wherefore Clause, ¶ 1. According to plaintiff, "a citizen must choose between voting or decreasing the probability of a service he or she may consider onerous." Pltf's Memo. of Law at 2.

### Discussion

Plaintiff's claim that the use of the voter registration list from which to select a jury interferes with one of her fundamental rights as a citizen overlooks the fundamental duty of a citizen. According to Justice Frankfurter, "jury duty should be regarded as a patriotic service, and that all public-spirited persons should willingly sacrifice pecuniary rewards in the performance of an obligation of citizenship." *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 231, 66 S.Ct. 984, 991, 90 L.Ed. 1181 (1946).

█ Furthermore, "[j]ury duty is the only time today when the government asks someone to give up his or her private pursuits to serve it. Although we have a military draft, no one is called today. It is true that at times such service is highly inconvenient to employees and employers, but the maintenance and independence of the judiciary must be protected and can only be protected by protecting the rights of those who are called upon to serve as jurors. Jury service is a duty and a right of citizenship ...." *In re Grand Juror Webb,* 586 F.Supp. 1480, 1483 (N.D.Ohio 1984). Consequently, plaintiff's claims of inconvenience and financial hardship are not acceptable reasons for not serving jury duty.

█ Plaintiff's assertions that jury duty violates her right to vote and is economically burdensome also ignore the fundamental importance of ensuring that jurors are drawn from as broad a cross-section of the society as possible. A jury is "a body truly representative of the community, composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." *Carter v. Jury*

*Commission of Greene Cty.*, 396 U.S. 320, 330, 90 S.Ct. 518, 524, 24 L.Ed.2d 549 (1970).

Many courts have found that the use of voter registration lists is appropriate in order to provide a fair cross-section of the community. *United States v. Cecil*, 836 F.2d 1431, 1448 (4th Cir.). *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988); *see also United States v. Lewis*, 10 F.3d 1086 (4th Cir.1993) (upholding the use of voter registration lists for jury selection).

■ In fact, Congress has stated that voter registration lists are the preferred source of names for prospective jurors because they ensure a fair cross-section of the community. *See* The Jury Selection Act, 28 U.S.C. § 1863(b)(2) (1988). "The use of voter registration lists was chosen by Congress in part because it provided each qualified citizen with an equal opportunity to cause his name to be among those from which random selection is made, and also because it was the largest generally available random source that was frequently updated." *United States v. Cecil*, 836 F.2d 1431, 1445 (4th Cir.1988) citing H.Rep. No. 1076, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 1792. More recently, citing two of its prior decisions, the Seventh Circuit, in *United States v. Ashley*, 54 F.3d 311, 314 (7th Cir.1995), reaffirmed the use of voter registration lists as the source of names for jury venires. *See also, United States v. Lewis*, 10 F.3d 1086, 1090 (4th Cir.1993) (upholding the use of voter registration lists in order to provide potential jurors). Consequently, there is ample justification for using the voter registration list in selecting a jury.

Defendant casts this argument as a challenge to New York's Judiciary Law § 506 which states:

The commissioner of jurors shall cause the names of prospective jurors to be selected at random from the voter registration lists, and from such other available lists of the residents of the county . . .

He maintains that "§ 506 does not infringe upon a fundamental right nor does it involve a classification of persons who receive special constitutional protection." Def's Mem. at 4. Therefore, according to defendant, Judiciary

Law § 506 is entitled to receive minimal judicial scrutiny and must be upheld so long as there is a rational relationship between the statute and any legitimate interest of government. *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1, *on remand*, 992 F.2d 243 (9th Cir.1993); *Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211, *on remand*, 10 F.3d 811 (D.C.Cir.1993). However, this reasoning is faulty since if we accept the allegations of the complaint as true, as we must, that the statutory scheme is burdening plaintiff's fundamental right to vote.

■ The right to vote is a fundamental right. *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). Legislative classifications must be strictly scrutinized and are unconstitutional absent a compelling governmental interest. Generally, the right at stake in a case involving a fundamental right to vote is the right to equal participation in governmental and societal decision-making.

■ However, even fundamental rights constitutionally can be infringed upon in some ways. For instance, a state or municipality can restrict the right to vote to its residents. *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). Although non-residents may be interested in what a state or municipality does, territory is accepted as the best means of drawing a boundary. *Id.* In *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978), the court stated: "a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders." *Id.* at 68–69, 99 S.Ct. at 389.

Thus, just as restricting the voting right to those who live within a particular territory is acceptable, so, too, is putting one's name in the jury selection pool—if this can be considered a restriction on one's voting right. So too, here, Congress has determined that the most efficient method to obtain a jury representative of the community is to use voter registration lists as part of the selection process. And there is no reason to think that a similar judgment by the New York State

Legislature is open to question. Using the voter registration list has, according to Congress and common sense, been lauded as both efficient and fair in its ability to provide a cross-section of the community. The fact that other alternatives exist under which plaintiff would not bear this burden does not make the burden on plaintiff's right to vote unconstitutional. In fact, the alternative lists used by the State present serious problems of both overinclusiveness and underinclusiveness as well as accuracy. The drivers' license list includes large numbers of non-citizens, and the tax list has the additional problem that many low income citizens are not required to file for various reasons. Thus, even applying a strict scrutiny test, New York's need to have a workable program of ensuring that a fair cross-section of the population is within the jury selection pool establishes a compelling interest that justifies the use of the voter registration list as one source for creating its jury pool.

Finally, along with the benefits of citizenship, must come the burden of meeting one of the principal obligations of citizenship in the United States. Indeed, the court is at a loss to understand why Congress and the States cannot make an unjustified failure of a citizen to meet his or her civic obligation to serve on a jury a basis for denying that citizen of his or her right to vote.[1] The *Harper v. Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), line of cases, relied upon by plaintiff here involve a quite different issue. There, the poll tax was being used to reduce the voting lists of minorities and the economically disadvantaged. Here, the end sought to be achieved by restricting the right to vote would be getting citizens to perform their civic obligations of jury service—a most worthy end. The court does not see how the plaintiff has suffered a constitutional injury or that the relevant state statute is unconstitutional. Selecting people for jury duty from a master list comprised of, among other things, a voter registration list does not violate one's fundamental right to vote nor does it impose any other unconstitutional hardship.

## Conclusion

Accordingly, defendant's motion to dismiss must be granted and plaintiff's request for a preliminary injunction must be denied. The Clerk of the court is directed to enter judgment for the defendant and close the case.

SO ORDERED.

---

1. Certainly, Congress or the States could make it a crime to willfully and unjustifiably refuse to appear for jury service. And, were a person convicted of a felony for doing so, he or she might well lose their right to vote. I cannot see why Congress or the States cannot do directly what they may achieve indirectly.